FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 JAN 28 PM 1:07

JEFFREY P. COLWELL
CLERK

BY__________DEP. CLK

'19 - CV - 00227

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

MURRAY MEETZE.

Plaintiff,

v.

UNIVERSITY OF COLORADO BOULDER,

DEAN LORI BERGEN.

Defendants.

Civil Action No.:

**EMPLOYMENT DISCRIMINATION COMPLAINT (Jury Trial Requested)**

NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**A. PLAINTIFF INFORMATION**

Murray Meetze, 2301 Goss St, Unit 104, Boulder CO 80302

803-422-1247, murray.meetze@gmail.com

**B. DEFENDANTS INFORMATION**

University of Colorado Boulder, 924 Broadway, 013 UCB, Boulder, CO 80309

303-492-7481

Dean Lori Bergen, 478 UCB, Boulder, CO 80309

303-492-4364, lori.bergen@colorado.edu

## C. JURISDICTION

1. Jurisdiction is Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101, et seq. Federal jurisdiction of this Court is invoked pursuant to federal question jurisdiction, 28 U.S.C. § 1331.
2. Jurisdiction is the Colorado Anti-Discrimination Act (CADA), as amended, C.R.S. § 24-34-401 et seq. Federal jurisdiction of this Court is invoked pursuant to federal question jurisdiction, 28 U.S.C. § 1367.
3. Plaintiff is a citizen of the United States of America and resides in the County of Boulder, Colorado.
4. At all times relevant hereto, Plaintiff was employed by Defendant University of Colorado Boulder in the County of Boulder, Colorado.
5. Upon information and belief, Defendant University of Colorado Boulder is an employer, engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.
6. Upon information and belief, the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. applies to Defendant University of Colorado Boulder, as they are engaged in an industry affecting commerce, which has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

7. Upon information and belief, Defendant University of Colorado Boulder is an employer, meaning the state of Colorado or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state.

8. Upon information and belief, the Colorado Anti-Discrimination Act (CADA), as amended, C.R.S. § 24-34-401 et seq. applies to Defendant University of Colorado Boulder, as they are the state of Colorado or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state.

9. Upon information and belief, Defendant Dean Lori Bergen is an individual currently residing in the State of Colorado in the county of Boulder.

**D. STATEMENT OF FACTS**

10. Plaintiff was an employee of University of Colorado Boulder (UCB) from around August 2014 until her illegal discharge on August 18, 2017.

11. Plaintiff has life-long allergies, to mold and mildew, a history of asthma, and Mast Cell Activation Syndrome (MCAS), an immunological disorder, which all substantially limit one or more life activities, including breathing, when activated by triggers, such as mold.

12. Plaintiff has Rheumatoid Arthritis and Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), both systemic autoimmune diseases, which substantially limit one or more life activities, including the operation of the functions of the immune system and the neurological system.

13. Plaintiff has Idiopathic Hypersomnia, a rare sleep disorder similar to Narcolepsy, and Delayed Sleep Phase Disorder, which substantially limits one or more major life

activities, including sleeping and waking and the neurological system, which has been established on record with an overnight polysomnography and multiple sleep latency test, and was regarded as having such an impairment by many university staff, professors, and students, as Plaintiff struggled with constant fatigue, trouble waking in the morning, and difficulty maintaining a normal sleep routine.

14. Plaintiff has Pseudobulbar Affect, which results in pathological, uncontrollable laughing or crying; in Plaintiff's case, it is crying. This condition has been established on record by Plaintiff's neurologist, Dr. Simon Oh, and Plaintiff was regarded as having such an impairment, by Dr. Paul Voakes, a professor at University of Colorado Boulder, Amanda McManus, Plaintiff's supervisor at University of Colorado Boulder, Christine Mahoney, Plaintiff's supervisor at University of Colorado Boulder, Dr. Polly McLean, Plaintiff's advisor at University of Colorado Boulder, and Dr. Shu-Ling Chen Berggreen, a professor at University of Colorado Boulder.

15. On February 24, 2015 at 10:39 AM, Plaintiff informed Defendant UCB, via email to her graduate studies program director, Dr. Janice Peck, of her condition, regarding fact 11, and becoming sick and having reactions with repeated exposure to the mold in the Armory building, and requested an accommodation.

16. The effective accommodation was obvious and easily provided, without undue hardship, as Defendant UCB had no extra on-campus space, that was not inside the offending building, the Armory, which has a known flooding and mold problem, so Plaintiff was allowed to work from home, starting February 24, 2015, which included:

   a. Plaintiff worked ten hours a week, from August 2014-August 2017, from home beginning February 24, 2015, excluding summers, managing the CU CMCI

internships website, as well as creating digital graphics and maintaining the Facebook page.

b. From May 2015-August 2015, Plaintiff worked for Defendant UCB full-time, from home, for the communications office, under supervisors Amanda McManus and Michelle Fulcher.

c. Plaintiff had a signed offer letter, signed on July 10, 2015, for the fall 2015 semester, to work ten hours a week, from home, as a research assistant for Dr. Paul Voakes.

17. The mold problem in the Armory building is well-known, as was Plaintiff's accommodation to work from home, including these examples:

a. Multiple professors have had offices moved to other buildings, including Dr. Shu-Ling Chen Berggreen, who moved to the building next door, as her health was negatively impacted by the mold in the building.

b. The spring 2015 graduate studies pro-seminar course was moved, from the basement to the top floor, due to students reporting allergy symptoms associated with time spent in the basement.

c. Plaintiff has an email, from May 20, 2015, from the graduate program assistant, Martha LaForge, where LaForge tells Plaintiff "You're smart working out not having to come in this building. The heat is ghastly—and it's hard to know what to wear. Now Stewart's office has flooded again—welcome to mold city!"

d. Plaintiff responded asking how Stewart's office had flooded, if it was because of the large amounts of rain Colorado has been having, and LaForge responds, "Yes, the mold smell is pretty strong in the building right now; Stewart is not happy. It

was just from the recent rain. It was flooded in 2013 as well, when 1B01 [the room where Plaintiff had all her classes]. And the new employee, Todd, who will be working across from the ATLAS building by September tells me that he's had headaches since he's been here, from mold he assumes."

18. On August 20, 2015, Defendants Bergen and UCB verbally withdrew Plaintiff's existing disability accommodation, to work from home, that had been in place since February 24, 2015; the event is characterized as follows:

    a.  Bergen started the August 20, 2015 meeting with Plaintiff by stating Plaintiff was "not allowed to cry," and if Plaintiff cried, the meeting would be concluded immediately.

    b.  Bergen stated Plaintiff would need to re-prove need for accommodation if Plaintiff would like to continue working and attending school, as a graduate student.

    c.  Bergen stated she had consulted with Defendant UCB counsel before deciding on this course of action.

    d.  Other than Plaintiff, two witnesses were present, Dr. Paul Voakes and Dr. Shu-Ling Chen Berggreen.

    e.  Plaintiff asked how she was to re-prove her need for her accommodation, and Bergen answered, "go to an allergist or something."

**Dean Lori Bergen**

19. Upon information and belief, Dean Lori Bergen is a University of Colorado Boulder dean charged with administration of the College of Media, Communication and Information (CMCI), and was new management on or around July 2015.

20. Upon information and belief, on or around August 2015, Bergen "got on" Dr. Paul Voakes and Dr. Shu-Ling Chen Berggreen for not showing Plaintiff "tough love" with regard to the building.

21. Upon information and belief, Bergen told Voakes and Chen Berggreen that she did "not like crying" and found it unacceptable that Plaintiff cries.

22. Plaintiff's supervisor, Christine Mahoney, had no need for Plaintiff to be in the building and was unaware of Plaintiff's existing accommodation being withdrawn.

23. This verbal meeting, referenced in fact 18, was a meeting that Plaintiff had called, about a violation of graduate student rights, not a meeting about Plaintiff's disability accommodation. Bergen intentionally sought out information, in a willful and wanton manner, to use against Plaintiff and the accommodation was what Bergen could find.

24. On August 21, 2015, Bergen provided a letter, dated August 20, 2015, summarizing the content of the verbal demands of the previous day, the contents and aspects of which are characterized by the following:

   a. The letter was addressed to Plaintiff's on-campus mailbox, UCB 478.

   b. Plaintiff would have until October 1, 2015 to provide "comprehensive documentation to indicate a significant impairment and make a request" to allow these "current exceptions" to continue as accommodations.

   c. This letter was provided to Plaintiff via Defendant UCB's unencrypted email server, Gmail, from the account of Ms. Amy Belue, Bergen's executive assistant, who had no need to know this disability information.

d. This email violated Defendant UCB's own policies, as their Institutional Equity and Compliance website, at that time, stated, "information relating to a person's disability is confidential and may only be released with the person's permission."

e. Seven additional people, who had no need to know of this disability information, were copied on this email, including Janice Peck, PhD, Nabil Echchaibi, PhD, Paul Voakes, PhD, Shu-Ling Chen Berggreen, PhD, John A. Stevenson, PhD, Hans W. Foote, PsyD, and Hilary Love.

25. On August 25, 2015, Defendant UCB, involving Michael Roseberry, ADA Coordinator, Office of Institutional Equity and Compliance, contacted Plaintiff, on behalf of Bergen and Defendant UCB, the contents and aspects of which are characterized by the following:

a. The communication was sent via unencrypted Gmail, with the subject "Accommodation request."

b. Roseberry stated that he understood that Plaintiff had "concerns regarding working in the Armory building," and he wanted Plaintiff to come to the office to "discuss any potential accommodations."

26. On August 26, 2015, Plaintiff delivered an intake questionnaire to the Equal Employment Opportunity Commission (EEOC) in Denver and was scheduled to return for an intake meeting on September 3, 2015.

27. On August 28, 2015, Bergen sent, via unsecured Gmail, Plaintiff another letter, the contents and aspects of which are characterized by the following:

a. Addressed to Plaintiff's on-campus mailbox, UCB 478.

b. The letter states Bergen is aware of Plaintiff's continued need for an "exception."

**Retaliation Against Plaintiff**

28. On September 2, 2015, Bergen emails Plaintiff a third letter, the contents and aspects of which are characterized by the following:
    a. Addressed to Plaintiff's on-campus mailbox, UCB 478.
    b. The letter was provided through the unencrypted Gmail server.
    c. Bergen's assistant, Ms. Amy Belue, signed her initials, next to Bergen's signature, indicating, she, too, had read this letter, which contained disability information, for which Belue had no need to access.
    d. Bergen states, "there is no further foreseeable need for you to otherwise be in the Armory building in order to perform the job duties."
29. On September 8, 2015, Plaintiff attended a pelvic floor physical therapy session, for the diagnosis of pelvic floor dysfunction, a stress-sensitive condition, with Defendant UCB's physical therapist, Jerri Miller, at Wardenburg Health Center, during the course of which, the following notes were made in Plaintiff's file:
    a. Plaintiff has "been under a great deal of stress with school issues"
    b. Plaintiff "displays tightness in PFM [pelvic floor muscles] – worse in past several weeks."
    c. Plaintiff's physical therapy progress had significantly regressed.
    d. "discussed deep breathing to reduce tension in PFM" with Plaintiff.
30. From September 2015 to December 2015, Plaintiff fulfilled her research assistantship duties, fact 16c, with Dr. Paul Voakes, regarding which the following applies:

a. In Defendant UCB's November 27, 2015 response to the EEOC, Defendant UCB acknowledged that Plaintiff is working as a research assistant, stating the college, CMCI, "facilitate[d]" this "opportunity with Dr. Voakes."

b. Defendant UCB failed to fulfill the terms of the offer letter and paid Plaintiff no wages for her work.

c. Defendant UCB further failed to provide Plaintiff's graduate school tuition assistance and health insurance stipend, as agreed upon in the offer letter.

d. The consequences of this failure affected Plaintiff's graduate school progress, as Plaintiff had to drop down to one course, which is considered full-time for a graduate student.

e. Plaintiff had to pay out-of-pocket for university health insurance.

f. Another graduate student, Deepan Dutta, who also had an offer letter for a research assistantship with Dr. Paul Voakes, worked alongside Plaintiff, doing the same job.

g. Plaintiff was more qualified than Dutta and had seniority, as Plaintiff had a research background and was a second-year journalism research student, whereas Dutta was a first-year journalism student, without a research background, and he had not completed any of the media and research methods courses, nor the journalism law and ethics courses that Plaintiff had already fulfilled in her first year of graduate school.

h. Dutta was paid wages, tuition assistance, and a health insurance stipend.

i. Every other graduate student employee who had a signed offer letter was paid wages, tuition assistance, and a health insurance stipend, except Plaintiff.

31. Plaintiff worked an additional job, also unpaid, from September 2015 to December 2015, for Defendant UCB, as a teaching assistant, two days a week, for Dr. Polly McLean's Global Media Literacy course.

32. On November 11, 2015, Plaintiff applied for spring 2016 graduate assistantship employment, as encouraged to do so by Dr. Paul Voakes, the former Journalism School dean and the department chair of Journalism, the results of which were as follows:

    a.  On December 11, 2015, Plaintiff received an email from Professor Michael McDevitt, who works underneath Bergen, for Defendant UCB, stating, "I cannot offer you a position at this time. I know you are ambitious and you certainly have much to offer in journalism, scholarship, and teaching. Thank you for your interest and best wishes."

    b.  All graduate students/graduate employees who previously had graduate student assistantships, as had Plaintiff, continued to be awarded assistantship positions for the spring semester of 2016.

    c.  Plaintiff was the only individual, who had previously held an assistantship job, who was not awarded a position.

    d.  Plaintiff's graduate student progress was again affected, as without an assistantship, tuition assistance, and a health insurance stipend, Plaintiff could not take more than one course.

33. On December 2, 2015, the Graduate School, of Defendant UCB, sent a letter, via unencrypted Gmail, to Plaintiff, the contents and aspects of which are characterized by the following:

    a. The Graduate School states that Bergen and Defendant UCB treated Plaintiff's "health issues as a disability"

b. The Graduate School recommends that the college, CMCI, of which Bergen is the dean, should "look into the possibility that the Armory does represent a health threat to those faculty, staff, and students who have to use it."

34. On January 15, 2016, Dr. Thomas Kunstman, Medical Director of Defendant UCB's Wardenburg Health Center, wrote a letter for Plaintiff, stating:

a. Plaintiff "has been seen by several providers at Wardenburg Health Center, including myself today for several medical issues which have been bothering [Plaintiff] for years."

b. Plaintiff "has been under significant psychological stress regarding difficulties created by the work site that she was originally assigned to in the Armory building. [Plaintiff] would develop significant hives when working there, which was evaluated last year...Please take this student's situation into account regarding her academic responsibilities as [Plaintiff] seems to be working diligently through some very difficult times."

35. On multiple occasions, between September 2015 and August 2017, including on August 25, 2016, which Plaintiff was notified about via email, on August 26, 2016, and later discussed in person with Christine Mahoney, Plaintiff's supervisor for the Internships office, Bergen attempted to remove Plaintiff from the 10-hour a week position with the Internships office, one method of which, included the following:

a. Bergen told members of Defendant UCB community, including Dr. Cindy White, the Associate Dean and Christine Mahoney's supervisor, which was then relayed

to Mahoney, that Plaintiff was not in good standing with the university and therefore could not keep working.

b. Plaintiff was, at all times, in good standing with the university.

36. On July 31, 2017, Bergen and Defendant UCB sent Plaintiff a letter, through Dr. Cindy White, which terminated Plaintiff's 10-hour a week employment with the Internships office, "effective August 18, 2017."

a. This termination was achieved by "re-distribut[ing]" the funds for Plaintiff's position.

b. As far as Plaintiff is aware, Plaintiff's position was the only position that was eliminated.

**E. STATEMENT OF CLAIMS**

FOR A FIRST CAUSE OF ACTION
AGAINST ALL DEFENDANTS
DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE UNDER
AMERICANS WITH DISABILITIES ACT

37. Plaintiff incorporates paragraphs 1-36, as if repeated verbatim.

38. Defendants are employers subject to ADA, 42 U.S.C. §§ 12101.

39. Plaintiff, Defendants' employee was well qualified for her position and is protected from disability discrimination by ADA, 42 U.S.C. § 12112 and § 12112-5(a).

40. Upon information and belief, Plaintiff was subject to disability discrimination and failure to accommodate disability by the intentional and malicious, willful and wanton, unlawful withdrawal of an existing disability accommodation and the failure to provide her access to her mailbox, which contributed to Plaintiff's privacy being violated, as detailed in this Complaint.

41. Plaintiff believed subjectively that the environment was hostile and abusive, and this series of acts were willful and wanton.

42. Upon information and belief, Defendants engaged in this series of discriminatory acts with malice or reckless indifference to Plaintiff's federally protected rights, with the willful and wanton intent of causing Plaintiff severe emotional distress.

43. As a direct and proximate result of Defendants' discriminatory acts, as stated above, Plaintiff was caused severe emotional distress and was discharged and has been injured, as stated above and below in Plaintiff's request for relief.

FOR A SECOND CAUSE OF ACTION
AGAINST ALL DEFENDANTS
PROHIBITED EXAM AND INQUIRIES / CONFIDENTIALITY VIOLATION UNDER AMERICANS WITH DISABILITIES ACT

44. Plaintiff incorporates paragraphs 1-43, as if repeated verbatim.

45. Defendants are employers subject to ADA, 42 U.S.C. §§ 12101.

46. Plaintiff, Defendants' employee, was well qualified for her position and is protected from demands of examination and inquiry by ADA, 42 U.S.C. § 12112-6.

47. Upon information and belief, Plaintiff was subject to willful and wanton prohibited inquiries and demands of medical examination, which violated her protected privacy, as her records were not kept separate and were released, without her permission, to individuals with no need to know, with the intent of causing Plaintiff severe emotional distress, as detailed in this Complaint.

48. Plaintiff believed subjectively that the environment was hostile and abusive, and this series of acts were willful and wanton.

49. Upon information and belief, Defendants engaged in this series of willful and wanton discriminatory acts with malice or reckless indifference to Plaintiff's federally protected rights.

50. As a direct and proximate result of Defendants' series of willful and wanton prohibited acts, as stated above, Plaintiff was caused severe emotional distress, had her confidentiality violated, and was discharged and has been injured, as stated above and below in Plaintiff's request for relief.

FOR A THIRD CAUSE OF ACTION
AGAINST ALL DEFENDANTS
RETALIATION / COERCION / DIFFERENT TERMS AND
CONDITIONS OF EMPLOYMENT / FAILURE TO HIRE UNDER
AMERICANS WITH DISABILITIES ACT

51. Plaintiff incorporates paragraphs 1-50, as if repeated verbatim.

52. Defendants are employers subject to ADA, 42 U.S.C. §§ 12101.

53. Plaintiff, Defendants' employee, was well qualified for her position and is protected from disability discrimination by ADA, 42 U.S.C. § 12112(a) and from retaliation, interference, coercion, and intimidation by ADA, 42 U.S.C. § 12203(a, b).

54. Plaintiff reported the offensive and discriminatory misconduct towards her to the Equal Employment Opportunity Commission.

55. Upon information and belief, because Plaintiff reported this harassment, Plaintiff was subjected to further discrimination, with the willful and wanton intent of causing Plaintiff severe emotional distress, including different terms and conditions of employment, as detailed in this Complaint, and failure to hire, for a position for which she was well qualified, and then ultimately discharged.

56. Defendants' alternative explanation, that Plaintiff was performing an unpaid internship, is a mere pretext, as supported by the other forms of continuing willful and wanton retaliation and by Defendants' acknowledgement that Plaintiff performed her duties and by the other graduate student, as stated above, who performed the same job, yet received all his benefits, as stated in the offer letter, while Plaintiff did not.
57. Plaintiff believed subjectively that the environment was hostile and abusive, and this series of acts constituted outrageous conduct that was willful and wanton.
58. Defendants' offered no explanation for failure to hire, only that Plaintiff certainly had much to offer in journalism, scholarship, and teaching, indicating that Plaintiff was well qualified for the position for which she was not hired, which added to the continuing willful and wanton retaliation that Defendants levied against Plaintiff prior to her termination and other evidence.
59. Defendants' alternative explanation, that the funds for Plaintiff's job were redistributed, is a mere pretext, as supported by the other forms of continuing willful and wanton retaliation that Defendants levied against Plaintiff prior to her termination and other evidence.
60. As a direct and proximate result of Defendants' willful and wanton retaliation, as stated above, Plaintiff was caused severe emotional distress and was discharged and has been injured, as set forth above and below in Plaintiff's request for relief.

FOR A FOURTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
DISCRIMINATORY OR UNFAIR EMPLOYMENT PRACTICES UNDER
COLORADO ANTI-DISCRIMINATION ACT

61. Plaintiff incorporates paragraphs 1-60, as if repeated verbatim.
62. Defendants are employers subject to CADA, C.R.S. § 24-34-401.

63. Plaintiff, Defendants' employee, was well qualified for her position and is protected from discriminatory or unfair employment practices by CADA, C.R.S. § 24-34-402.

64. Plaintiff believed subjectively that the environment was hostile and abusive, and this series of acts constituted outrageous conduct that was willful and wanton.

65. Upon information and belief, Defendants engaged in this series of willful and wanton discriminatory acts, with malice or reckless indifference to Plaintiff's state protected rights, and with the intent of causing Plaintiff severe emotional distress.

66. As a direct and proximate result of Defendants' outrageous conduct, that was willful and wanton, as stated above, Plaintiff was caused severe emotional distress and was discharged and has been injured, as set forth above and below in Plaintiff's request for relief.

FOR A FIFTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE UNDER COLORADO ANTI-DISCRIMINATION ACT

67. Plaintiff incorporates paragraphs 1-66, as if stated verbatim.

68. Defendant is an employer subject to CADA, C.R.S. § 24-34-401.

69. Plaintiff, Defendants' employee, was well qualified for her position and is protected from disability discrimination and harassment, with reasonable accommodation required, by CADA, C.R.S. § 24-34-403.

70. Upon information and belief, Plaintiff was subject to the willful and wanton harassment and withdrawal of her existing reasonable disability accommodation, which had existed with no undue burden on the employer, as detailed in this Complaint.

71. Defendants' series of acts were grossly negligent, willful and wanton, constituting extreme and outrageous conduct, as they were purposefully committed, recklessly with

conscious disregard for the rights and safety of Plaintiff, and with intent of causing Plaintiff severe emotional distress.

72. Plaintiff believed subjectively that the environment was hostile and abusive, and this series of acts constituted outrageous conduct that was willful and wanton.

73. As a direct and proximate result of Defendants' series of discriminatory acts, as stated above, Plaintiff was caused severe emotional distress and was discharged and has been injured, as stated above and below in Plaintiff's request for relief.

**F. ADMINISTRATIVE PROCEDURES**

74. Plaintiff filed an intake questionnaire, on August 26, 2015, and a charge of ongoing discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on September 03, 2015. Plaintiff filed this charge with the EEOC within the statutorily required time period since Defendants' illegal employment actions.

75. The EEOC issued Plaintiff a right-to-sue letter on or about October 30, 2018.

**G. REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks for a judgment against Defendants for:

1. Injunctive and equitable relief as the Court deems appropriate including:
   - i) A trial by jury;
   - ii) Requiring Defendant UCB to fix the leaks and flooding problems in the UCB Armory building, including cleaning within the walls and under the carpets, rather than simply testing the air in two different locations, or else condemn the building and move faculty, staff, and students elsewhere, so as to no longer recklessly, in a willful and wanton manner, endanger anyone's health;

iii) Requiring Defendant UCB to provide all staff, faculty, and administrators ADA training, with specialized training on invisible disabilities, including specifically, but not limited to, the Ehlers-Danlos Syndromes, Mast Cell Activation Syndrome (MCAS), Dysautonomia and Postural Orthostatic Tachycardia Syndrome (POTS), Idiopathic Hypersomnia and Narcolepsy, Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), Pelvic Floor Dysfunction, Interstitial Cystitis, Gastroparesis, Pseudobulbar Affect;

iv) Compelling Defendant Bergen to undergo training on emotional development and emotional intelligence;

v) Compelling Defendant UCB to create a system to allow students the ability, without fear of retribution, to anonymously report faculty and staff who are exhibiting concerning behaviors. Other schools have such systems in place, as it is certainly untrue that administrators, faculty, and staff never do anything wrong. Defendant UCB, however, only has a program for faculty and staff to report students. Graduate students, in particular, live in the precarious ground between employee and student, always at the mercy of having their student status leveraged against them as an employee and vice versa. Faculty can too easily sabotage a graduate student's future, unnecessarily defame a student's character, and immensely contribute to a student's health declining, as demonstrated by this case; yet, despite the frequency with which these problems, including ADA violations, occur, rarely are institutions and administrators held responsible for their actions;

vi) Requiring Defendant UCB refund all money that Plaintiff paid to Defendant UCB in association with this degree program (from 2014 to 2017);

vii) The lost value of Plaintiff's insurance policy and compensation for medical expenses incurred due to the loss of Plaintiff's health insurance stipend;

viii) Compensation for any and all other physical, emotional, and/or medical problems Plaintiff suffered as a result of Defendants' discriminatory actions;

ix) Compelling Defendant UCB pay Plaintiff for the fall 2015 labor, that Defendant UCB willingly took the credit for, including the money Plaintiff should have received in tuition assistance;

x) Plaintiff requests recouping lost wages, in the amount the court deems appropriate, since January 2016 and lost wages since May 2016, when Plaintiff would have otherwise graduated, if not for Defendants interference in Plaintiff's graduate employment, and therefore graduate school progress, with a master's degree, and therefore would have earned higher wages (the average salary for a research position with a master's in journalism, according to the U.S. Bureau of Labor Statistics, as of May 2015, was $65,530);

xi) Requiring Defendant UCB to pay all tuition and fees, including the cost of books, associated with the cost of Plaintiff completing a graduate program at another institution, including paying the costs of the five prerequisite courses Plaintiff needs to attend a new program, as well as paying a monthly living stipend during the course of these five prerequisite courses and Plaintiff's graduate program; and

2. Compensatory damages, including but not limited to all other expenses and damages suffered by Plaintiff, which arose from the willful and wanton discrimination, abuse, and termination of Plaintiff, except for the retaliation claim, unless the court allows such damages, to be paid by all Defendants, according to proof at trial;
3. General damages, including but not limited to damages for emotional distress, damages to Plaintiff's reputation, time, and pain and suffering inflicted by Defendants' willful and wanton conduct;
4. Incidental damages that Plaintiff suffered as a result of Defendants' willful and wanton conduct;
5. Pre-judgment and post-judgment interest;
6. Punitive damages for Defendants' willful and wanton, malicious and/or recklessly indifferent conduct towards Plaintiff, except for the retaliation claim, unless the court allows such damages, to be paid by all Defendants, according to proof at trial;
7. Costs and fees, including all attorney fees, to the extent allowed by law, with interest;
8. Any and all other relief as the court deems appropriate.

**H. PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

Murray Meetze

**MURRAY MEETZE**

January 28, 2018

**Plaintiff Exhibit A**

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Murray M. Meetze**
**2301 Goss Street**
**Boulder, CO 80302**

From: **Denver Field Office**
**303 East 17th Avenue**
**Suite 410**
**Denver, CO 80203**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **541-2015-02257** | **Christopher D. Padilla, Supervisory Investigator** | **(303) 866-1336** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

for: [signature]

**Amy Burkholder,**
**Field Office Director**

OCT 30 2018
*(Date Mailed)*

Enclosures(s)

cc: UNIVERSITY OF COLORADO BOULDER
OFFICE OF UNIVERSITY COUNSEL